UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Andre Brown,

**Decision and Order**

Plaintiff,

11-CV-35S

v.

C.O. Victor et al.,

Defendants.

I.    INTRODUCTION

For approximately the first five years of this case, plaintiff Andre Brown ("Brown")

represented himself while pressing his allegations that corrections officers assaulted him on

October 16, 2007.  About a year ago, the Court decided that Brown's case merited appointment of

*pro bono* counsel.  Brown's counsel has since worked with defense counsel to patch up gaps in

discovery that Brown had left while *pro se*.  The two sides announced to the Court last August that

they had reached an agreement to conduct, with the Court's approval, limited discovery in a short

timeframe to get the case ready for trial.

The agreement between counsel, however, included the condition that Brown submit to a

second deposition.  Brown refused to agree to a second deposition, scuttling the agreement and

putting his counsel in the awkward position of having to walk back what they had told the Court

in August.  The demise of the agreement also spoiled relations between counsel.  Defense counsel

had started to produce information based on the agreement and felt double-crossed by Brown.

Brown's counsel went ahead and filed a non-dispositive motion to reopen discovery (Dkt. No. 81),

claiming independent and meritorious reasons for an order directing the discovery that they had

sought through the defunct agreement.  Defense counsel opposes the motion as one-sided and prejudicial, arguing that discovery had closed in the case and should stay closed if Brown will not recognize the obvious need to depose him again.

The Court held oral argument on January 5, 2017.  For the reasons below, the Court grants Brown's motion in part.

## II.    BACKGROUND

This case concerns allegations that Brown suffered an assault at the hands of defendants on October 16, 2007 at the Attica Correctional Facility ("Attica").  The operative pleading has been Brown's amended complaint (Dkt. No. 17), which Brown filed while he was *pro se*.  Following an order from the Court (Siragusa, *J.*) filed on January 23, 2014 (Dkt. No. 23), the only claim that Brown has and that the parties have litigated is the first claim from the amended complaint, a claim of excessive force under the Eighth Amendment by way of 42 U.S.C. § 1983.  Among other discovery events that occurred while Brown was *pro se*, defendants took a deposition of Brown on October 17, 2014.  Under the scheduling order that the Court issued (Dkt. No. 24), with two extensions (Dkt. Nos. 38, 50), discovery closed on December 1, 2014.  The extensions allowed Brown to make an additional discovery request on November 6, 2014.  (Dkt. No. 51.)  Defendants responded on October 21, 2015.  (Dkt. No. 71.)

The posture of the case changed following the filing of defendants' dispositive motions. On December 2, 2014, defendants filed a motion for summary judgment.  (Dkt. No. 53.)  On September 10, 2015, Judge Skretny adopted, without objection, this Court's recommendation to deny defendants' motion.  (Dkt. No. 68.)  On October 27, 2015, Brown filed a motion for assignment of *pro bono* counsel.  (Dkt. No. 74.)  The Court granted Brown's motion on February 4,

2016 (Dkt. No. 77) and appointed the attorneys who now represent Brown and who filed the pending motion for him. Brown's counsel took a few months to assess the state of the case and then requested a status conference before the Court. (Dkt. No. 78.) At the status conference, held on August 9, 2016, the parties reported that the case was not quite ready for trial and that each side had some discovery that it wanted to pursue. (Dkt. No. 80.) The parties reported further that they had agreed to a streamlined approach to any remaining discovery, including updated medical records and additional depositions. Brown's counsel reported that they were considering drafting an amended complaint, written professionally by them, that would clarify the allegations that survived prior screening. The Court suggested that the parties submit a stipulation that would set new deadlines for a limited reopening of discovery. The Court then awaited submission of that stipulation.

The stipulation never came; a little over three months later, the pending motion came instead. As the Court can best understand from the motion papers and from oral argument, whatever agreement or streamlined approach the parties had reached fell apart because of a decision by Brown. The agreement that the parties had reached required, *inter alia*, a second deposition of Brown. Brown apparently took issue, however, with the length of the transport and with other logistical issues that took place to set up his first deposition in October 2014. As a result, when Brown's counsel informed him of the need for a second deposition in exchange for certain other discovery materials, Brown flatly refused to consent. The record is not completely clear as to whether Brown changed his mind after the August 9, 2016 status conference or whether Brown had not quite understood what counsel had told him before the status conference. Either

3

way, the relationship between counsel for the parties quickly soured after Brown's decision.

Defense counsel had started producing certain discovery materials in reliance on the agreement

discussed at the status conference and felt double-crossed that Brown now was pulling out of his

end of the bargain.  The strident tone of the papers in opposition to the pending motion reflect

the frustration that defense counsel felt about a perceived inability to rely on representations made

in court.  Brown's counsel, meanwhile—perhaps feeling burned by their client and ruffled by the

strong reaction from defense counsel—went ahead and filed the pending motion to reopen

discovery.  Brown's counsel argues that, independent of any agreement that had been reached and

that broke down, significant gaps in discovery were left open from Brown's *pro se* efforts and

warranted supplemental production to create a full record.  Brown's counsel also has apologized

for any confusion or hard feelings that resulted from the breakdown of the agreement.  Defense

counsel argues either that the original agreement between the parties should be enforced or that

the Court should reject any "one-sided" discovery for Brown.  "Defendants are prejudiced by any

'reopening' of discovery that does not allow trial counsel to depose the Plaintiff."  (Dkt. No. 85 at

6.)  Relations between counsel for the parties have not been helped by, on the one hand,

accusations of delayed discovery responses despite more recent offers of assistance (*compare* Dkt.

No. 81-1 at 3 *with* Dkt. No. 85-1 at 20); and on the other hand, ironically overheated rhetoric

about attorneys going back on their word and about "awful ramifications for a profession that is

already too adversarial and rancorous." (Dkt. No. 85 at 5.)

III.    DISCUSSION

   The Court wants right away to address the issue that percolated through defendants'

motion papers and oral argument: defense counsel's frustration about the agreement that he had

reached with Brown and Brown's counsel.  Up to a point, defense counsel's frustration is not

unreasonable.  The federal judiciary does not have the time or the resources to supervise every

event and every negotiation that occurs in litigation.  Judges need to know that what they hear

from the parties about the state of a case accurately represents how the parties are moving their

way toward trial or some other kind of resolution.  When a representation or an agreement breaks

down, even for reasons beyond any attorney's control, the breakdown can arouse visceral feelings

of being double-crossed and can poison any negotiations that might be necessary in the future.

That said, there are reasons why everyone involved needs to take a deep breath.

Defendants' litany of prejudices suffered (Dkt. No. 85 at 5–6) assumes that the Court cannot issue

orders to recalibrate a case after entry of experienced counsel to help a *pro se* prisoner.  As the

parties will read in a moment, that assumption is not true.  *Cf. Mason v. Town of New Paltz Police*

*Dep't*, 103 F. Supp. 2d 562, 567 (N.D.N.Y. 2000) (denying, without prejudice, summary judgment

on a Section 1983 claim to allow for additional depositions).  If the parties have not suffered

prejudice then they need to reflect on what really happened here to restore their relationship for

future negotiations.  Brown was a *pro se* prisoner who muddled his way through this case for about

five years before the Court assigned *pro bono* counsel.  Brown's understanding of pretrial

proceedings, while enough to delay assignment of counsel until last year, likely is sufficiently

rudimentary that he might not understand why updated documents need to be exchanged and

why a second deposition of himself might be necessary.  The Court credits the explanation from

Brown's counsel at oral argument that Brown likely blew up the agreement between the parties

based on an outsized importance assigned to the logistics of setting up his first deposition.

Crediting any other explanation would be unwarranted, because again, any other explanation would assume that an obvious and inartful deception could alter pretrial discovery in a way that the Court could not fix.  Going forward, Brown needs to stay on the same page as everyone else in this case.  Brown at the same time needs to understand that a formal court order, which the Court is issuing now, can be enforced in ways in which informal agreements sometimes cannot.  *Cf. Davidson v. Dean*, 204 F.R.D. 251, 258 (S.D.N.Y. 2001) (dismissal warranted where inmate plaintiff disregarded discovery orders).

With respect to the more substantive issue of unfinished discovery, the Court could pull out some hornbooks on contract law to try to determine whether the agreement between the parties constituted an offer, an acceptance, and a binding arrangement.  The parties' arguments also raise the issue of whether Brown's counsel had apparent authority to enter any discovery agreements on Brown's behalf.  *Cf., e.g., Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 248 (E.D.N.Y. 2002) (finding apparent authority to enter a settlement agreement).  There is a simpler way to resolve the problem, though, based on the addition of *pro bono* counsel to help Brown.  Since Brown's first deposition, the Court decided that the case had enough substance to require the assistance of counsel.  Counsel have had an opportunity to review the record that Brown had developed on his own and have decided that a few updates and additions are necessary.  *Cf. Rivas v. Suffolk Cty.*, No. 04-4813-PR(L), 2008 WL 45406, at *2 (2d Cir. Jan. 3, 2008) (summary order) (remanding for appointment of counsel and holding that "[a]ppointed counsel should be given the opportunity to file in the district court any and all motions that counsel deems appropriate, including motions for default judgment, to reopen discovery, and for a new trial");

*Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, No. 06-CV-6592 CJS MWP,

2013 WL 792762, at *6 (W.D.N.Y. Mar. 4, 2013) (appointing *pro bono* counsel and reopening

discovery accordingly); *Maggette v. Dalsheim*, No. 81 CIV. 7050 (PKL), 1985 WL 1393, at *1

(S.D.N.Y. May 21, 1985) (noting, as background, multiple amendments of pleadings and ongoing

discovery after appointment of *pro bono* counsel).  Some additional medical documents have

become available that will give defense counsel a reason to question Brown again and to update

the assessment of Brown's current status.  All of these factors are independent reasons to reopen

discovery for a limited time to tie up some loose ends before the setting of a trial date.[1]  *Cf. Smith v.*

*Collins*, No. 15CIV0216PAEJCF, 2016 WL 1178750, at *1 (S.D.N.Y. Mar. 18, 2016) (appointing

Limited Discovery Counsel for the purpose of "defending the deposition of the plaintiff and

taking the depositions of the individual defendants, as well as conducting document and other

discovery necessary to take or defend such depositions"); *Huaman v. Sirois*, No. 3:13CV484 DJS,

2015 WL 1806660, at *4 (D. Conn. Apr. 21, 2015) (allowing a second deposition of a named

party in response to changes in discovery).

　　Accordingly, and for the independent reasons explained above, the Court finds that the

updated discovery requested from each side is appropriate.  On or before June 30, 2017, the

parties must complete the following in whatever order they see fit: 1) a second deposition of

Brown; 2) depositions of the named defendants; 3) depositions of non-party Buchheit and up to

two non-party medical staffers; 4) updated medical and health records for Brown; 5) the DOCCS

---

[1] At oral argument, there was a brief assertion that defendants could not seek additional discovery because they currently have no motion pending to that effect.  In ordering discovery for both sides based only on Brown's pending motion, the Court believes that the need here to update discovery in a reasonably expeditious manner falls generally within its "wide discretion" to manage pretrial discovery.  *See, e.g., Am. Savings Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003).

policy or procedure for generating misbehavior or unusual incident reports; and 6) depositions of

the two witnesses that Brown has introduced most recently.  The Court denies without prejudice

an inspection of the site of the alleged assault; Brown's counsel can reargue the importance of an

inspection at a later time if all of the other discovery proves insufficient.  Brown's counsel

mentioned at oral argument that the logistics of Brown's first deposition, including transport,

unsettled him in some way.  The Court requests that DOCCS take reasonable measures to

facilitate the arrangements for Brown's second deposition.

A status conference will occur on July 11, 2017 at 10:30 AM to follow up.

IV.     CONCLUSION

For all of the foregoing reasons, the Court grants Brown's motion (Dkt. No. 81) in part to

allow both sides to wrap up discovery in a reasonably expeditious manner.

SO ORDERED.

___/s Hugh B. Scott_____
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: January 13, 2017